```
              IN THE UNITED STATES DISTRICT COURT FOR
             THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                *
U.S. EQUAL EMPLOYMENT           *
OPPORTUNITY COMMISSION,         *
                                *
     Plaintiff                  *
                                *
v.                              *      CIVIL NO.: WDQ-04-3129
                                *
FEDERAL EXPRESS CORPORATION     *
                                *
     Defendant.                 *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION AND ORDER

The U.S. Equal Employment Opportunity Commission (the "EEOC") sued Federal Express Corporation ("FedEx") for failure to accommodate a former FedEx employee's disability and retaliatory discharge in violation of the American With Disabilities Act ("ADA")[1]. Pending is FedEx's motion for summary judgment. For the following reasons, FedEx's motion for summary judgment will be denied.

I.   BACKGROUND

In March 2000, Ronald Lockhart, a deaf individual, began working as a handler for FedEx. *See* Plain. Opp. Ex. 1 at ¶1, Ex. 4 at 50. As a handler at FedEx's Baltimore-Washington International Airport facility ("BWI facility"), Lockhart sorted, stacked and scanned packages. *See* Plain. Opp. Ex. 5 at 79, 83, 91. Lockhart's

---

[1] 42 U.S.C. § 12101 *et seq.* (2005).

1

primary language is American Sign Language ("ASL").  *See* Plain. Opp. Ex. 1 at ¶2.  Despite his poor English fluency and inability to hear sound and read lips, Lockhart was able to effectively perform his job. *See* Plain. Opp. Ex. 1 at ¶1; Def. Mot. Summ. J. Ex. A. at 183-184.

Although he could perform the essential functions of his job, without an interpreter, Lockhart was unable to obtain information disseminated in training sessions and daily, monthly and quarterly staff meetings. *See* Plain. Opp. Ex. 4 at 44-45, 54, 132-133, 143-144. Lockhart also found certain aspects of FedEx's benefits and attendance policies ambiguous without the aid of an interpreter. *See id.* at 92-93, 110-112; Ex. 9 at 245-246, 324-325. Due to his inability to obtain information provided to other FedEx employees, Lockhart repeatedly requested an interpreter for training sessions and meetings. *See* Plain. Opp. Ex. 4 at 44-45, 54, 132-133.  Despite his preference for an interpreter, he also requested that his managers provide him with notes of all meetings. *See id.* at 143-144.  Lockhart knew that an interpreter and/or notes would adequately accommodate him because he was able to attend college with the aid of an interpreter and note taker. *See* Plain. Opp. Ex. 1 at ¶6.  With the exception of a few inadequate attempts to accommodate Lockhart--recruiting an untrained employee to sign for Lockhart on two occasions--for two years, FedEx virtually

ignored these requests.  *See* Plain. Opp. Ex. 8 at 43-44, 51; Ex. 16 at 28-19, 32, 35.

On October 17, 2001, Lockhart filed a charge with the EEOC claiming that FedEx violated the ADA by failing to provide him with a reasonable accommodation.  *See* Plain. Opp. Ex. 17.  In January 2002, FedEx retained a professional interpreter, Derwood O'Quinn, for the monthly staff meetings as well as a training session, performance evaluation and disciplinary proceeding.  *See* Plain. Opp. Ex. 18 at 7; Def. Mot. Summ. J. Ex. L at 124, 126, 128-133, 136-140.  Lockhart, however, attended several monthly meetings that were not interpreted, none of the quarterly meetings were interpreted and prior to August 2002, the monthly video training tapes were neither interpreted nor closed-captioned.  *See* Plain. Opp. Ex. 4 at 149,169; Ex. 9 at 211.  Moreover, Lockhart did not receive notes for all daily meetings and when received, the notes were not comprehensive.  *See* Plain. Opp. Ex. 9 at 224-227.

Days after Victor Cofield, Lockhart's supervisor, became aware of his 2001 charge, Lockhart received a performance reminder[2] for his absence due to an ice storm.  *See* Plain. Opp. Ex. 9 at 275-277; Def. Mot. Summ. J. Exh. Q. FedEx requires its employees to

---

[2]A performance reminder is a written deficiency notification.  *See* Def. Mot. Summ. J. Ex. E at 197.  If an employee receives three performance reminders within twelve months, termination of employment is warranted under FedEx policy.  *See id.* at 211.

3

maintain a 96.9% attendance rate. *See* Def. Mot. Summ. J. Ex. H. As this was his second performance reminder and his attendance rate was below satisfactory, Lockhart was called into an emergency meeting and was given a sample Performance Agreement. *See* Plain. Opp. Ex. 4 at 109. A Performance Agreement outlines the steps an employee agrees upon to improve his performance. *See* Def. Mot. Summ. J. Ex. G at 71. If the employee fails to adhere to the terms of the Performance Agreement, termination may result. *See* Def. Mot. Summ. J. Ex. R.

Lockhart alleges that he did not fully understand the Performance Agreement, which is evidenced by his agreement to improve his performance "through training and remedial work". *See* Def. Mot. Summ. J. Ex. R.; Plain. Opp. Ex. 4 at 104-105, 110. Although he accepted the Performance Agreement, Cofield acknowledged that it was unclear. *See* Plain. Opp. at 324-325. While O'Quinn was present during the emergency meeting, he did not assist Lockhart in executing the Performance Agreement. *See* Plain. Opp. Ex. 4 at 112. No interpreter was provided for Lockhart's initial performance reminder. *See* Plain. Opp. Ex. 9 at 289.

In January 2003, Lockhart experienced food poisoning and sought medical attention. *See* Plain. Opp. Ex. 1 at ¶18. Due to the severity of his illness, he was absent from work. Despite his medical documentation, Cofield issued Lockhart his third

4

performance reminder, thereby terminating him.  *See id.* at ¶ 23.

On September 30, 2004, the EEOC initiated this suit on Lockhart's behalf alleging failure to accommodate and retaliatory discharge.

## II. LEGAL DISCUSSION

A.   Motion for Summary Judgment

   1. Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask ... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

The court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent

must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  A "scintilla" of evidence is not sufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

      2. Failure to Accommodate under the ADA

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to..... terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The term "discriminate" includes...not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability...,unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer.  42 U.S.C. § 12112(b)(5)(4).  An employer is not relieved of its duty to accommodate when an employee is able to perform the essential functions of the job. *See Buckingham v. USPS*, 998 F.2d 735, 740 (9th Cir. 1993). Reasonable accommodation, therefore, includes measures necessary for an employee to "enjoy equal benefits and privileges of employment as are enjoyed by...other similarly situated employees without disabilities."  29 C.F.R. § 1630.2(o)(1)(iii) (2005).

Absent direct evidence, an inference of discrimination may arise by proof of a prima facie case of discrimination.  *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).  To establish

6

a prima facie case of failure to accommodate, the plaintiff must prove that: (1) he has a disability within the meaning of the statute; (2) the employer had notice of his disability, (3) with reasonable accommodation he could enjoy the privileges and benefits of employment as are enjoyed by other similarly situated employees without disabilities; and (4) the employer has refused to make a reasonable accommodation.  *Rhoads v. FDIC*, 257 F.3d 373, 387 (4th Cir. 2001); 29 C.F.R. § 1630.2(o)(1)(iii).

FedEx contends that the EEOC's claim must fail because it cannot meet the fourth element.  Specifically, FedEx argues that Lockhart only requested daily access to an interpreter which was too costly and therefore an unreasonable accommodation.  FedEx, therefore, maintains that denying this request does not violate the ADA.  Even assuming that Lockhart only requested daily interpretative services, summary judgment is still inappropriate.

An employer who has received notice that a reasonable accommodation is requested "cannot escape its duty to engage in the interactive process simply because the employee did not come forward with a reasonable accommodation that would prevail in litigation."  *Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 953 (8th Cir. 1999).  Once a disabled employee requests a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation.  29 C.F.R. § 1630.2(o)(3). The appropriate accommodation is best determined

through a flexible, interactive process that involves both the employer and the disabled employee. *See id.* Accordingly, even if Lockhart only requested daily interpretative services, FedEx was obligated to research alternative accommodations. Summary Judgment is inappropriate when there is a genuine dispute as to whether the employer acted in good faith in seeking a reasonable accommodation. *See Haneke v. Mid-Atlantic Capital Mgt.*, No. 04-2146, 2005 U.S. App. LEXIS 8186 , slip  op. at *4,(4th Cir. May 10, 2005) (implicit in the fourth element of the prima facie case is whether the employer and employee engaged in an interactive process to identify a reasonable accommodation)).

An employee, however, must demonstrate not only the employer's failure to engage in the interactive process, but that such failure resulted in a failure to identify an appropriate accommodation. *See Walter v. United Airlines, Inc.,* No. 99-2622, 2000 U.S. App. LEXIS 26875, slip op. at *14, (4th Cir. Oct. 25,2000) (*citing Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000)).  Based upon the record, a reasonable jury could find that FedEx's failure to adequately engage in the interactive process led to its failure to provide a reasonable accommodation.

It is undisputed that Lockhart placed FedEx on notice of his limited ability to communicate by retaining an interpreter for both his initial interview and training.  *See* Plain. Opp. Ex. 1 at ¶¶7, 11; Ex. 10a at 14.  However, for the first two years of

8

Lockhart's employment, the record is replete of any meaningful effort FedEx made to ascertain the most appropriate manner to communicate with Lockhart.  Although Lockhart was the first deaf employee at the BWI facility, his supervisors made no effort to familiarize themselves with the company's policy on disabled workers or the ADA.  *See* Plain. Opp. Ex. 5 at 56-57, Ex. 7 at 24, Ex. 9 at 71-72, 255-256, 261.  They also failed to contact two vital company resources for guidance, the Human Resources department and the Human Capital Management Program[3].  *See* Plain. Opp. Ex. 7 at 23, Ex. 9 at 111-112, Ex. 13 at 27, 42-43.

When Lockhart informed Cofield that the Ohio facility had an on-site interpreter for its deaf employees, Cofield made no attempt to contact the facility.  *See* Plain. Opp. Ex. 9 at 259-260.  Moreover, Patrick Hanratty, Senior Operations Manager, knew that the FedEx facility at Dulles International Airport employed deaf employees, however, he made no effort to ascertain how those managers effectively communicated with them.  *See* Plain. Opp. Ex. 5 at 57-59.  They failed to follow-up on these sources even though it was clear that Lockhart was not obtaining vital information.  *See id.* at 73-74.

Throughout 2001, Lockhart viewed several mandatory training videos which were neither interpreted nor closed-captioned.  *See* Plain. Opp. Ex.9 at 122-123; 127-128.  FedEx did not provide

---

[3]The Human Capital Management program coordinates requests for reasonable accommodation.  *See* Plain. Opp. Ex. 13 at 27.

interpreters for these training sessions because Cofield did not know that interpreters were covered under the ADA. *See id.* at 122-123. Instead of providing Lockhart with a "qualified" interpreter for his training exams, FedEx provided him with a colleague who basically provided him with the exam answers. *See* Plain. Opp. Ex. 1 at ¶12.

Despite Lockhart's repeated requests, from March 2000-2001, FedEx did not provide Lockhart with notes for the daily pre-work meetings. *See id.* at ¶10, Ex. 4 at 141-142, 153, 170. As a result, Lockhart was not provided with the same information given to his hearing colleagues such as safety topics, changes in corporate policies and scheduling of monthly meetings. *See* Plain. Opp. Ex. 4 at 184. In the monthly meetings, Lockhart would receive a one-page outline, given to all employees, which did not include the question and answer portion of the meeting. *See* Plain. Opp. Ex. 9 at 157. Lockhart, therefore, would not receive vital information relating to topics such as pay raises. *See* Plain. Opp. Ex. 5 at 27-28. Moreover, FedEx did not provide Lockhart with a reasonable accommodation form until January 2003. *See id.* at 159. Lockhart, however, indicated that he needed an interpreter to help him fill out the form, but his request was denied. *See* Def. Mot. Summ. J. Ex. L.

FedEx contends that although it was initially slow in responding to Lockhart's needs, its subsequent attempts to accommodate him satisfy its obligation under the ADA. Specifically,

10

FedEx states that it in 2002, it provided Lockhart with notes for the pre-work daily meetings and a professional interpreter for monthly meetings and disciplinary proceedings. Although FedEx had the ultimate discretion to choose between effective accommodations-- daily interpretative services or combination of monthly interpretative services and daily note taking--the accommodation given still must be reasonable. *See Walter,* 2000 U.S. App. LEXIS 26875, at *14("The interactive process does not require the employer to provide the specific accommodation requested by the disabled employee, or even to provide the best accommodation, so long as the accommodation provided to the disabled employee is reasonable").

Despite O'Quinn's hiring, there were several monthly meetings that were not interpreted and none of the quarterly meetings were interpreted. *See* Plain. Opp. Ex. 4 at 149; Ex. 9 at 437-438. Furthermore, the daily meeting notes were inadequate because they did not include all of the information discussed at the meetings and were not consistently provided. *See* Plain. Opp. Ex. 9 at 224-227, 237, 240. As a reasonable jury could find that Lockhart was not provided with a reasonable accommodation, summary judgment is inappropriate. *See Pantazes v. Jackson*, 366 F.Supp. 2d 57, 69 (D.D.C. 2005) (summary judgment precluded where dispute existed regarding whether employer implemented an accommodation sufficient under ADA); *Merry v. Sullka & Co.,* 953 F.Supp. 922, 927-28 (N.D. Ill. 1997) (summary judgment precluded where various accommodations delayed, or only provided sporadically, for years).

11

### 3. Retaliation

The elements of a retaliation claim are: (1) engagement in a protected activity; (2) adverse employment action by the employer; and (3) a causal connection between the protected activity and the asserted adverse action. *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001). Once this is shown, the burden is on the employer to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994). The plaintiff must then demonstrate that the employer's reason was mere pretext for retaliation by proving "both that the reason was false, and that discrimination was the real reason for the challenged conduct." *Jiminez v. Mary Washington College*, 57 F.3d 369, 377-78 (4th Cir.) (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993), *cert. denied*, 516 U.S. 944, 133 L. Ed. 2d 304, 116 S. Ct. 380 (1995)).

FedEx argues that the EEOC has failed to establish a prima facie case because it has not met the third element.

Here, Lockhart was disciplined shortly after Cofield discovered that he had filed an EEOC charge. *See* Def. Mot. Summ. J. Ex. Q. Additionally, he was terminated shortly after informing Cofield that the daily pre-work meeting notes were inadequate and insisting that he have more access to an interpreter. *See* Plain. Opp. Ex. 1 at ¶22. The EEOC, therefore, has established a prima

12

facie case. *See Lamb v. Qualex, Inc.*, No. 99-1188, 2002 U.S. App. LEXIS 5982, slip op. at *32-33, (4th Cir. Apr. 3, 2002)("A sufficient casual connection is established by proving a close temporal connection between the protected activity and the adverse action")).

FedEx contends that Lockhart was terminated, not in retaliation for asserting his rights under the ADA, but for his poor attendance. In viewing the facts most favorable to the EEOC, a reasonable jury could find this reason as pretextual.

In November 2002, although Lockhart's absences warranted a performance reminder, Cofield used his discretion in not disciplining Lockhart. *See* Plain. Opp. Ex. 9 at 303. Despite his prior leniency, shortly after discovering that Lockhart filed an EEOC charge, Cofield disciplined Lockhart for his absence related to inclement weather. As this was his second performance reminder within 12 months, this led to his January 2003 termination. Although FedEx has a strict attendance policy, managers are encouraged to use discretion when appropriate such as absences due to inclement weather. *See* Plain. Opp. Ex. 25.

Additionally, when exigent circumstances have contributed to an employee's absence or punctuality, managers have exercised their discretion not to terminate that employee. *See* Plain. Opp. Ex. 9 at 413 (deciding not to terminate employee when absence related to grandfather's funeral); *see id.* at 415 (deciding not to

13

terminate employee when late because of car accident); *See* Plain. Opp. Ex. 27 at 114-3 (deciding not to terminate employee who was late after being detained by the police).  Here, Lockhart provided medical documentation for a severe illness and was nevertheless terminated.  In further support of the EEOC's retaliation claim, Cofield admits that at the time of Lockhart's termination, they had a very strained relationship because of the ADA issues.  *See* Plain. Opp. Ex. 9 at 348.  This admission, combined with FedEx's efforts in accommodating Lockhart, may lead a reasonable jury to find that Lockhart experienced retaliation.  Accordingly, summary judgment is inappropriate.

### III. CONCLUSION

For the reasons discussed above, FedEx's motion for summary judgment will be denied.


<u>September 13, 2005</u>                 _____/s/_____
Date                             William D. Quarles, Jr.
                                 United States District Judge